Rube F. PRINCE and Elizabeth Prince

v.

Luther Edward CREEL.

Civ. A. No. 7646.

United States District Court,
E. D. Tennessee, N. D.

April 17, 1972.

George W. Ridenour, Jr., Ridenour & Ridenour, Clinton, Tenn., Jack B. Draper, Knoxville, Tenn., for plaintiffs.

E. Bruce Foster, Jr., Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

### MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before the Court for consideration is the motion of Luther Edward Creel for judgment notwithstanding the verdict or in the alternative for a new trial.

This action arose out of an automobile accident occurring in Roane County, Tennessee on September 19, 1970. The United States was brought in on a third-party complaint based on the Federal Tort Claims Act. 28 U.S.C. § 2671 et seq.

Defendant is a Hearing Examiner and Director of Hearing Examiners for the Federal Trade Commission. He is an attorney who has been employed by the FTC since March 1, 1939; he holds a GS–17 rating; and his official duty station is Washington, D.C.

In this capacity, defendant was assigned to conduct hearings for the Federal Reserve Board in Birmingham, Alabama, on Tuesday, September 22, 1970. On September 17, 1970, a Travel Order was approved authorizing the necessary travel at government expense between September 19 and October 11, 1970. The order authorized reimbursement for use of his private automobile at ten cents per mile so long as the total, including per diem, did not exceed the total cost of the authorized travel by common carrier.

Ordinarily this trip would require two days (one way) by automobile. Therefore, defendant would have left on Sunday, September 20, 1970. However, he planned to take one day's leave en route to visit relatives in Cullman, Alabama. For this reason he left a day early—the day of the accident. He stated that he would not have left until Sunday had he not planned the Cullman stop. He would have taken his car on this trip even if he had not planned the Cullman stop because he needed it to conduct personal business in Alabama on completion of his assignment. He took annual leave to conduct this business prior to returning to Washington.

After the accident, he completed the trip by air. On return to Washington he had his Travel Order amended to authorize travel by common carrier. Defendant did not file an accident report with the government until November, 1971, after this suit was filed. He reported the incident only because his insuror advised him that there was a coverage question because his policy excluded claims subject to the Federal Tort Claims Act.

In his deposition, defendant explained his delay in reporting the accident to the government as follows:

"I didn't think the Government was involved. I thought it was something that would be taken care of otherwise." (p. 59)

He explained the basis for this opinion as follows:

"I had left early for my own convenience, and I amended my travel order explaining that I had an accident . . . and I claimed only per diem from Monday afternoon . . . And I wanted to keep the Government

out of the matter entirely . . ." (p. 60)

The substance of these statements was repeated by defendant in testimony before the jury.

Prior to trial defendant moved for summary judgment on the ground that plaintiffs' exclusive remedy was against the United States pursuant to 28 U.S.C. § 2679(b). The motion was denied without prejudice to renew. After proof was presented the motion was renewed and again denied. The Court was disturbed by the fact that defendant, an experienced lawyer and judge of an administrative tribunal, had testified under oath that he did not report the accident to the government because he did not believe it was involved. Since there was a possibility that an issue of fact existed, the question was submitted to the jury. See Schulte and Bruns v. Great Lakes Stevedoring Corp., 300 F.2d 897, 899 (C.A.6, 1962). Counsel was advised that the Court had serious doubt that any evidence existed to support plaintiffs' and third-party defendant's contention and would consider a post-trial motion should plaintiffs prevail. The jury found for the plaintiffs.

■ It appears to be settled that state law governs whether an employee of the United States was acting within the scope of his employment within the meaning of the Federal Tort Claims Act. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Provost v. Smith, 308 F.Supp. 1175 (E.D.Tenn.1969); Mrochinski v. Tendall, 273 F.Supp. 221 (E.D.Wis.1967).

■ Tennessee law recognizes that the travel of an employee may benefit both the employee's purely personal interests and the employer's business interests. Free v. Indemnity Insurance Company of North America, 177 Tenn. 287, 292, 145 S.W.2d 1026 (1941). In order to hold an employer liable for his employee's negligent operation of a motor vehicle it must be shown that at the time of the accident the driver was on his employer's business and acting within the scope of his employment. Goodman v. Wilson, 129 Tenn. 464, 467, 166 S.W. 752 (1914). Even if at the time of the accident the employee is acting contrary to or in defiance of his employer's instructions, the employer will remain liable unless it is shown that, at the time of the accident, the employee had abandoned and turned completely aside from the employer's business to engage in some purpose wholly his own. A slight deviation by an employee in charge of an automobile for his own purposes when he is on business for his employer does not affect the latter's liability. Goff v. St. Bernard Coal Co., 174 Tenn. 558, 561–562, 129 S.W.2d 205 (1939). To determine whether a trip of an employee was within the scope of his employment where a business purpose of the employee co-exists with a private purpose of the employee, the ultimate question is whether the duties of the employee created the necessity for the travel. If answered in the affirmative, he was acting within the scope of his employment. Pratt v. Duck, 28 Tenn. App. 502, 509–513, 191 S.W.2d 562 (1945); Leeper Hardware Co. v. Kirk, 58 Tenn.App. 549, 434 S.W.2d 620 (1968). See also Patton v. Brayton & Co., 184 Tenn. 592, 201 S.W.2d 981 (1947); American Casualty Co. v. McDonald, 166 Tenn. 25, 57 S.W.2d 795 (1943). It appears that Tennessee places liability on the employer once it is shown that the trip benefits him in a fashion contemplated by the employment. Jones v. Polishuk, 252 F.Supp. 752 (E.D.Tenn.1965).

■ The United States contends that defendant elected to travel to Birmingham via Nashville, Tennessee and that this decision constituted a deviation from his employment. The contention is without merit. Defendant had at least four routes by which he could travel directly to Birmingham. While the three routes through Chattanooga involved a shorter distance than the one through Nashville, because of road conditions, the Nashville route required less travel time. In addition, at the time of the ac-

cident defendant was seeking overnight lodging at a location readily accessible to all four alternative routes. It cannot be said that he had made a decision to go through Nashville.

The fact that defendant may have been some twenty miles off course at the time does not alter this view. He had left the Interstate at an exit marked for Oak Ridge in search of a motel. Being unfamiliar with the roads he became lost and did the best he could under the circumstances to reach a motel in the area of Oak Ridge.

■ The United States further contends that under the rule of Caldwell v. Adams, 51 Tenn.App. 373, 367 S.W.2d 804 (1963), defendant was without the scope of his employment. That case held that a mechanic who, while road-testing a truck stopped at a cafe where he spent two hours drinking beer and became intoxicated, had left his employment on a personal frolic and, because of his intoxicated state, was incapable of resuming his employment. That case is not in point. Defendant in this case never went on a personal frolic which suspended his employment. He sprained his ankle before leaving his home in Washington. To alleviate the pain he purchased a pint of whiskey in North Virginia which he nursed throughout the day. Approximately forty miles north of Knoxville he disposed of the bottle which was still a quarter full. His testimony indicates that he was fully conscious and in control of his automobile just prior to the accident. His use of the whiskey was clearly within the scope of his employment, even if in violation of government regulations. See Goff v. St. Bernard Coal Co., supra.

■ Plaintiffs contend that under Mrochinski v. Tendall, supra, defendant was acting outside his employment at the time of the accident. That case is not in point because an employee on his way to and from his work to and from his home and not engaged in any duty connected with his employment is not acting within the scope of his employ-

ment. See Free v. Indemnity Insurance Company of North America, supra, 177 Tenn. at 291, 145 S.W.2d 1026; cf. Fitzgerald v. Wood, 34 Tenn.App. 345, 349–350, 238 S.W.2d 103 (1950). *Mrochinski* is distinguishable from Jones v. Polishuk, supra, both because of the nature of the stay at the motels in question and because of a difference in their respective travel authorizations. In *Jones* the motel stay was an overnight stop that was integral to a continuous round trip. It involved duties at the temporary station requiring at most only a few hours. In *Mrochinski* the duties at the temporary station required an extended stay which caused the motel to become a temporary residence. Further, the travel authorization forms in both cases provided space for designation of whether travel by private automobile had been determined to be more advantageous to the Government. In *Jones* an affirmative determination had been made. In *Mrochinski* there was a negative determination. By contrast the travel authorization form in our case does not provide for such a determination.

■ The theory of plaintiffs and cross-defendant that, because defendant left Washington one day earlier than necessary for the performance of his duties in Birmingham in order to be able to visit his mother-in-law in Cullman, he was on a personal mission at the time of the accident is contrary to the law of Tennessee. It must be shown that he had turned completely aside from Government business to engage in some purpose wholly his own. Goff v. St. Bernard Coal Co., supra. A slight deviation from the natural route to obtain overnight lodging is not sufficient to remove him from the scope of his employment. Jones v. Polishuk, supra. There is no evidence that defendant had abandoned the Government's business at the time of the accident. Accordingly, it is ordered that defendant's motion for judgment notwithstanding the verdict be, and the same hereby is, sustained.

In the opinion of the Court, the four grounds assigned for the alternative motion for a new trial are lacking in merit and the motion would have been denied had the Court overruled the motion for judgment notwithstanding the verdict.