**David A. LEFEVE, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation; State Farm Fire & Casualty Insurance Company, a corporation, Defendants.**

**Civ. A. No. 80–G–0885–NW.**

United States District Court,
N. D. Alabama,
Northwestern Division.

Aug. 24, 1981.

John D. Clement, Jr., Tuscumbia, Ala., for plaintiff.

Robert O. Cox, Poellnitz, Cox, McBurney & Jones, Florence, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This case arises out of an automobile accident which occurred on June 30, 1980, in Waverly, Tennessee. The plaintiff, David Lefeve, was a passenger in an automobile operated by Scott Folks, and owned by Charles Folks, which was involved in an accident with an automobile owned by Beverly Scurlock and operated by Randy Duke. The plaintiff suffered severe and crippling injuries as a result of this accident, and seeks to recover under policies providing uninsured motorist coverage which are available to him. In order to do so, plaintiff alleges that Randy Duke was negligent and that the automobile operated by Randy Duke was uninsured.

By agreement of the parties, this case was submitted to the court on the issue of coverage alone upon the depositions, exhibits, and briefs submitted by counsel. After reviewing those documents and applicable law, the court finds that judgment is due to be granted the defendants for the reasons stated herein.

In order to understand the contentions of the parties, it is necessary to establish the relationship between the parties and the insurance policies involved. The plaintiff claims coverage under four policies of liability insurance issued by the defendant State Farm Fire & Casualty Insurance Company [State Farm Fire] to Harold L. Scott, the stepfather of the plaintiff and with whom the plaintiff resided at the time of the accident. By the terms of those policies, the plaintiff thus qualifies as an insured within the meaning of the uninsured motorist provisions of these policies, which provide protection with limits of $10,000.00 per person per policy.

The plaintiff also claims coverage under the liability insurance policy issued by the defendant State Farm Mutual Automobile Insurance Company [State Farm Mutual] to the owner of the car in which the plaintiff was riding. That policy also provides uninsured motorist protection for any person who might be injured by an uninsured motorist while occupying said automobile, with limits of $10,000.00 for each person.

The automobile which collided with the car in which the plaintiff was riding was owned by Beverly Little Scurlock and was insured by Tennessee Farmers Mutual Insurance Company. The driver of the car, Randy Duke, was employed by Mrs. Scurlock's husband, Tommy Scurlock, and his partner, Robert Romer. The Scurlocks, who were out of town at the time of the accident, had given Duke permission—though perhaps limited—to drive the car to and from work.

The parties have agreed that Tennessee law applies to determine the issue of liability of the driver and the owner of the car which collided with the car in which the plaintiff was riding, and further have agreed that Alabama contract law governs

the issue of coverage under the uninsured motorist provision of the policies.[1]

The only issue before the court is whether coverage is provided the plaintiff under the uninsured motorist provisions of the four State Farm Fire policies and the one State Farm Mutual policy in question. It is not disputed that the plaintiff was an "insured" within the meaning of the uninsured motorist provisions of those policies. The issue centers on whether the automobile driven by Randy Duke qualifies as uninsured within the meaning of those provisions.

The definitive terms of all four policies issued by State Farm Fire are identical and the definitions contained in the State Farm Mutual policy do not significantly differ. The definition of an uninsured motor vehicle, as contained in the State Farm Fire policies, basically provides that an uninsured motor vehicle means:

1. a motor vehicle, the ownership, maintenance or use of which is:
    a) not insured; or
    b) insured, but
        (1) the limits of liability are less than required by state law; or
        (2) the insuring company denies coverage or is insolvent; or
2. a "hit and run" vehicle whose owner or driver remains unknown.

The State Farm Mutual policy contains the above definition, plus additional definitions which are inapplicable to this situation.[2]

The court finds that the Scurlock automobile which injured the plaintiff falls outside the policy definition of uninsured motor vehicle in that the "ownership, maintenance or use" of the vehicle was in fact insured by Tennessee Farmers Mutual. Furthermore, the insurance is within the limits required by Alabama law,[3] the insurance company has not denied coverage and is not insolvent, and it was not a hit and run accident.

Also, under Alabama statutory and decisional law, the vehicle in question was not uninsured. By statute, every motor vehicle liability policy issued or delivered in Alabama covering automobiles registered or garaged in the state must provide "insurance for the protection of persons insured thereunder who are legally entitled to recover damages from *owners or operators* of uninsured motor vehicles . . . ." Code of Alabama 1975, § 32–7–23 (emphasis added).[4] Although the statute itself does not define uninsured motor vehicle, the Alabama Supreme Court stated that the term is " 'ordinarily defined to include motor vehicles with respect to which neither the *owner nor the operator* carries bodily injury liability insurance, and "hit and run" automobiles.' 7 Am.Jur.2d Automobile Insurance, § 136, p. 462; 79 A.L.R.2d 1253." *Higgins v. Nationwide Mutual Insurance Co.*, 291 Ala. 462, 282 So.2d 301, 305 (1973) (emphasis added).

The plaintiff in brief relies upon a portion of the following definition employed by the Alabama Supreme Court in *Wilbourn v. Allstate Insurance Co.*, 293 Ala. 466, 305 So.2d 372 (1974):

1. The four State Farm Fire policies were issued in Alabama to an Alabama resident. The one State Farm Mutual policy, however, was issued in Tennessee to a Tennessee resident. The question of whether Tennessee law applies to the interpretation of coverage under that policy, however, was waived by both parties by arguing only Alabama law in briefs.

   The parties also agreed that Alabama law should determine whether policy coverage could be "stacked." Since the court finds that coverage does not exist under the uninsured motorist provisions, it is not necessary to reach the issue of "stacking."

2. The additional definitions in the State Farm Mutual policy relate to "a cooperative use motor vehicle."

3. The Alabama Motor Vehicle Safety-Responsibility Act requires a policy limit of not less than $10,000.00 for bodily injury to or death of one person in any one accident, not less than $20,000.00 for bodily injury to or death of two or more persons, and not less than $5,000.00 for property damage for any one accident. Code of Alabama 1975, § 32–7–6.

4. Although the section is entitled "uninsured motorist coverage" and is frequently referred to in that manner, both the statute and insurance policies deal with the motor vehicle which is uninsured, not the motorist.

It is well-settled and common knowledge that a motorist or vehicle carrying no liability insurance is "uninsured." Courts have also found motorists were "uninsured," in other situations: (1) policy limits are below the statutory minimum, (2) the policy fails to cover the injury involved, (3) the insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident, (4) the owner or operator of the vehicle is unknown, commonly classified as a "hit-and-run" case. 305 So.2d at 373–74.

The plaintiff emphasized the second of the included circumstances—that the policy fails to cover the injury involved—to support his contention that the vehicle which injured him was uninsured. The Alabama court did not elaborate on what it meant by an injury not covered by the policy, and the plaintiff failed to convincingly show how or why his injury is not covered by the Tennessee Farmers Mutual policy. Generally, courts have found an injury not to be covered by a policy in the particular circumstances where the insurance policy expressly excluded coverage of the injury, the vehicle or the driver, or where the vehicle involved was operated without the consent or permission of the owner. See, Annot., 26 A.L.R.3d 883, 897–900 (1969). Attempting to show that his injury is not covered by the Tennessee Farmers Mutual policy, the plaintiff contends that Duke was driving the car without the permission of the owner. Such is not the case since Tommy Scurlock, the owner's husband and an insured within the terms of the policy, gave Duke at least limited permission to drive the car to and from work. The testimony of Duke and Scurlock differs as to what, if any, restrictions were placed upon the use of the car. Regardless of whether conditions were placed upon Duke's use of the car, the court finds from the facts discussed further in the opinion that Duke had at least limited permission, and probably implied unlimited permission to use the car in the manner in which he operated it.

■ Applying the definitions of uninsured motorist or motor vehicle as found in the policies and Alabama law, this court concludes that the car driven by Randy Duke was not an uninsured vehicle. To the contrary, the owner of the car carried bodily injury insurance on the automobile with Tennessee Farmers Mutual within the limits required by law; the insurance company has not denied coverage and is not insolvent; and it was not a hit-and-run accident.

■ It is clear that a party making a claim for uninsured motorist coverage must prove that the vehicle which injured him was in fact uninsured. See generally, Annot., 26 A.L.R.3d 883, 892 (1969). The court finds that the plaintiff has failed to meet that burden in this case. The most plausible argument that the plaintiff presents to show that the insurance policy does not cover this accident centers around the contention that Duke was driving the car outside the scope of the permission given by Tommy Scurlock. In his deposition, Mr. Scurlock stated that he gave Duke permission to use his wife's car to go to and from work if it were raining. (Deposition of Thomas G. Scurlock, at page 5.) Duke, in his deposition, testified that he asked the Scurlocks where the keys to the car were "in case it was raining or something," and they told him that the keys were in the car. Nothing else was said concerning any conditions or restrictions on the use of the car, according to Duke. (Deposition of Randy D. Duke, at pages 5, 15.) The facts are uncontroverted, however, that Duke worked for Tommy Scurlock and his partner Robert Romer as bartender at the tavern they ran. Duke stayed at the Scurlock's house while they went to Gatlinburg so that he could be closer to the tavern.[5] Furthermore, Duke had to pick up the money for operating the tavern from Romer on

5. The Scurlocks' house was located only one-half of a mile to one mile from the tavern whereas the Romers' house, where Duke had been staying, was not in Waverly, Tennessee, where the tavern was located, but was in New Johnsonville. (Deposition of Randy D. Duke, at page 4.)

Monday, carry it to the tavern, and take the receipts from the tavern home with him each night. Duke used the car to transport the money so that he would have some place to put it, rather than driving his own motorcycle. (Deposition of Randy D. Duke, at pages 6, 11, 14.) The Scurlocks left for Gatlinburg on Monday. The Romers joined them there on Wednesday evening, leaving Duke as the only person in charge of running the business on Thursday and Friday. (Deposition of Thomas G. Scurlock, at pages 6–7.) The accident which forms the basis of this suit occurred about 12:20 a.m. on Friday, June 13, 1980, while Duke was driving from the tavern to the Scurlocks' home, with the money from the tavern operations in the car with him.

To refute the plaintiff's argument, the defendants convincingly contend that the above-stated facts evidence an agency relationship between Scurlock and Duke which existed at the time of the accident. The court agrees and finds that Duke was the sole person in charge of Scurlock's business and that he had custody of the automobile during the time the Scurlocks were out of town. At the time of the accident, Duke was about the business of Scurlock in that he was carrying the money from the tavern to Scurlock's home for safekeeping. Whether or not Duke drove the car within the scope of his permission, "it is possible to find that an employee was acting within the scope of his employment but that he had no permission to make use of an automobile in doing so." 12 Couch on Insurance, § 45:445, (2d ed. 1964), citing *Greene v. St. Paul-Mercury Indemnity Co.*, 51 Wash.2d 569, 320 P.2d 311 (1958).

Furthermore, the court finds that Duke was within the scope of his employment at the time of the accident. As has been recognized by other courts, under Tennessee law, the employer remains liable for the conduct of an employee if the duties of employment necessitated travel and the trip benefitted the employer:

> Tennessee law recognizes that the travel of an employee may benefit both the employee's purely personal interests and the employer's business interests. *Free v.*

*Indemnity Insurance Company of North America*, 177 Tenn. 287, 292, 145 S.W.2d 1026 (1941). In order to hold an employer liable for his employee's negligent operation of a motor vehicle it must be shown that at the time of the accident the driver was on his employer's business and acting within the scope of his employment. *Goodman v. Wilson*, 129 Tenn. 464, 467, 166 S.W. 752 (1914). Even if at the time of the accident the employee is acting contrary to or in defiance of his employer's instructions, the employer will remain liable unless it is shown that, at the time of the accident, the employee had abandoned and turned completely aside from the employer's business to engage in some purpose wholly his own. A slight deviation by an employee in charge of an automobile for his own purposes when he is on business for his employer does not affect the latter's liability. *Goff v. St. Bernard Coal Co.*, 174 Tenn. 558, 561–562, 129 S.W.2d 205 (1939). To determine whether a trip of an employee was within the scope of his employment where a business purpose of the employee co-exists with a private purpose of the employee, the ultimate question is whether the duties of the employee created the necessity for the travel. If answered in the affirmative, he was acting within the scope of his employment. *Pratt v. Duck*, 28 Tenn.App. 502, 509–513, 191 S.W.2d 562 (1945); *Leeper Hardware Co. v. Kirk*, 58 Tenn.App., 549, 434 S.W.2d 620 (1968). See also *Patton v. Brayton & Co.*, 184 Tenn. 592, 201 S.W.2d 981 (1947); *American Casualty Co. v. McDonald*, 166 Tenn. 25, 57 S.W.2d 795 (1943). It appears that Tennessee places liability on the employer once it is shown that the trip benefits him in a fashion contemplated by the employment. *Jones v. Polishuk*, 252 F.Supp. 752 (E.D.Tenn.1965).

*Prince v. Creel*, 358 F.Supp. 234, 237 (E.D. Tenn.1972).

The duties of Duke in operating the tavern included safekeeping of the money by taking it home with him and thus involved the necessity for travel. The trip on which Duke embarked prior to the time of the accident benefitted Scurlock in that the

funds from the tavern were not left unguarded in the building but were carried home with Duke. Since Duke's activities were within the scope of employment, Tennessee law places liability upon Scurlock for the negligence of his employee.

The plaintiff contends that the Tennessee Farmers Mutual policy does not provide coverage for business liabilities. While such may be the case, the plaintiff has failed to prove the nonexistence of a business liability policy which would have covered such liability. Also, the Tennessee Farmers Mutual policy provides coverage for liability for bodily injury "arising out of the ownership, maintenance or use . . . of the owned motor vehicle . . . ." Tennessee Farmers Mutual therefore is obligated to pay on behalf of Tommy Scurlock, a named insured, anything that he is legally obligated to pay the plaintiff by reason of the ownership and the use of the insured automobile, whether it was used by him or by someone else for which he is legally responsible. It, therefore, is immaterial whether Randy Duke qualifies as an insured under the policy. Tommy Scurlock clearly is insured and his liability is covered by Tennessee Farmers Mutual.[6]

As stated in Couch on Insurance,

It is immaterial insofar as the insurer's liability is concerned whether the liability of the insured arises from his own act or whether he is vicariously liable for the conduct of an employee or agent acting within the scope of his authority or employment.

The employer's automobile liability insurer is accordingly liable on the policy when the insured employer is liable to a third person because of the negligent act of the insured's employee . . . .

12 Couch on Insurance § 45:29 (2d ed. 1964).

A further indication that coverage exists under the Tennessee Farmers Mutual policy lies in the fact that Keith Rogers, claims supervisor, initially made the decision to extend coverage to Duke under the policy because "the policyholder's husband had given him permission to use the automobile." (Deposition of Keith Rogers, at page 8.) This decision evidenced itself in the payment made by Tennessee Farmers Mutual on the subrogation claim by State Farm Mutual for the property damage to the Folks' automobile. (Deposition of Keith Rogers, at page 10, and Exhibits 3 and 4 thereto.) The plaintiff makes much of Mr. Rogers' statement that Tennessee Farmers Mutual changed its position concerning coverage when it learned of the pendency of this suit. Concerning the change of position, Mr. Rogers stated: "We are going to await the decision of the Federal Court in Alabama." (Deposition of Keith Rogers, at page 13.) Contrary to plaintiff's assertion, this is not a denial of coverage but merely an assertion that the company decided to wait and see whether this court holds that the uninsured motorist provisions of these other companies apply, thereby relieving Tennessee Farmers Mutual of liability under its policy. The court further notes that no claims have been presented to Tennessee Farmers Mutual for bodily injury by the plaintiff or anyone else. The only claim presented—that of State Farm Mutual for property damage—was paid in full. (Deposition of Keith Rogers, at page 12.) Again, the plaintiff has failed to show that this case falls within one of the definitions of uninsured motor vehicle—that the company denied coverage.

The plight of the plaintiff falls within the anomalies of the law envisioned by the Alabama Supreme Court in *Criterion Insurance Co. v. Anderson*, 347 So.2d 384, 388 (Ala. 1977), in that he was severely injured by a vehicle with minimum liability coverage and would have been better off if the vehicle were uninsured so that he could "stack" the uninsured motorist policies available to him. The plaintiff is not without remedy, however, since he has a cause of action against the Scurlocks and Duke, and the automobile which injured the plaintiff carried liability insurance. Tennessee Farmers Mutual probably is obligated to afford coverage on at least one of the theo-

---

**6.** The Tennessee Farmers Mutual policy, on page 6, insures the named insured, Beverly Little Scurlock, and her spouse, Tommy Scur- lock, and any person using the insured vehicle "with the permission of the named insured or such spouse."

ries mentioned herein—that Duke was an agent of Scurlock or had implied permission to use the vehicle as he did, or that Scurlock is vicariously liable because of the ownership of the car and the employment relationship. In any event, plaintiff has failed to meet his burden of proving that the Tennessee Farmers Mutual policy does not cover this injury, or that the company has denied coverage. He also has not shown that no other policy exists which might cover this accident, such as a business liability policy.

The court therefore concludes that the automobile which injured the plaintiff was not uninsured according to the definitions contained in the policies and Alabama case law. Therefore, neither the State Farm Mutual nor the State Farm Fire uninsured motorists provisions cover plaintiff's injuries in this case. A separate order entering judgment in favor of the defendants will be entered contemporaneously.