PATTON *v.* L. O. BRAYTON & Co., *et al.*

(*Jackson,* April Term, 1947.)

Opinion filed May 3, 1947.

Weakley & Weakley, of Dyersburg, for plaintiff in error.

C. P. Moss, of Dyersburg, for defendant in error.

Mr. Justice Prewitt delivered the opinion of the Court.

This is a Workmen's Compensation case in which the widow of the deceased employee was awarded the maximum recovery provided by the statute.

The only question made is whether at the time of the accidental death of deceased he was on a mission for his master. The trial judge held that the injury resulted while the deceased employee was on his master's business, but the defendants contend that there is no material evidence to support this finding.

The defendant, L. O. Brayton & Company, maintained its home office at Dyersburg, and also maintained a repair shop there. The deceased resided at Dyersburg and had been working for Brayton & Company for several years, and at the time he met his death was foreman of the company. The company had a construction contract at Martin, a distance of about 50 miles east of Dyersburg, and furnished the deceased a truck belonging to it, and he was driving this truck when he was killed about one mile north of Dyersburg on September 3, 1946.

The petitioner's theory is that the deceased was going from his work at Martin to Dyersburg for the purpose of having the truck in which he was riding repaired; that it was raining that morning at Martin and deceased had told the other employees that there would be no work done that day; that he purchased gas that morning at a filling station in Martin and had it charged to his employer.

The defendants' theory is that the deceased was estranged from his wife; that she had filed a suit for divorce against him and had obtained an injunction against him; that he had engaged a room at a hotel in Martin for a week; that he found out about the divorce and injunction suit about 7 p. m. on the night prior to his death; that the deceased informed his daughter on the morning of his

death by telephone, less than two hours prior to the accident, that he was coming to Dyersburg to her home to get his clothes she had received from petitioner's home at his request, to see about the pending divorce suit, and to see about withdrawing funds from his bank account at Dyersburg before the injunction could be served on him or the bank.

The only proof offered by the petitioner that deceased was on his master's business at the time of the accident is the testimony of two witnesses. The witness G. C. Moore, an employee of Brayton & Company, was asked:

"Q. On Monday, what did he tell you about the truck? A. He told me on Monday going to see about getting another truck, but this would be a truck at Clinton and be over there on the job.

"Q. What was the condition of this truck that he came to Dyersburg in? A. That is something I wouldn't know. I didn't drive it."

J. W. Rankin, an attorney at Martin, testified that he had been retained by the deceased on the afternoon before he met his death. Mr. Rankin was recalled by counsel for the petitioner and testified as follows:

"Q. Mr. Rankin, on Monday when Mr. Patton was in your office and you were advising with him, did Mr. Patton make any statement about what he might have to do on Tuesday? A. He did.

"Q. What was this he said he might have to come to Dyersburg? A. Something about a truck.

"Mr. Weakley: We except to that, if the Court please, as incompetent, as a self serving declaration and not part of *res gestae* and would not be competent in behalf of petitioner as to throw any light as to whether he was on duty or not.

596

"The Court: I overrule the exception.

"Mr. Weakley: Note our exceptions."

The petitioner earnestly insists that deceased was driving the truck with the permission and consent of his employer; that he had the authority to take the truck to Dyersburg on the occasion to have it repaired and to get supplies; that his personal business was only incidental to the trip to Dyersburg; and that the reasonable inference to be drawn was that the deceased was on his master's business at the time he was fatally injured.

The defendants insist that at best the above facts and circumstances constitute only an inference that deceased was injured in the course of his employment, and that this inference, if any, was completely rebutted by the testimony of deceased's daughter, Mrs. Huffstutter, to the effect that he was going to Dyersburg to see about his personal affairs.

(1, 2) It will be seen that the above testimony of Mr. Rankin was duly excepted to. The rules as to hearsay evidence and *res gestae* apply. *Baxter* v. *Jordan,* 158 Tenn. 471, 14 S. W. (2d) 717.

▇ The burden of proof is on the petitioner to show that deceased's injury arose out of and in the course of his employment. *Shockley* v. *Morristown Produce & Ice Co.,* 158 Tenn. 148, 11 S. W. (2d) 900; *Home Ice Co.* v. *Franzini,* 161 Tenn. 395, 32 S. W. (2d) 1032.

▇ There is no competent proof in the record to show that Patton was going to Dyersburg to have his truck repaired, to get supplies, or on any other mission for his employer. There is competent proof (testimony of his daughter) that deceased was going to Dyersburg on the Monday in question on a personal mission—to see about his clothes, the divorce suit, and about his money in the bank there. Our cases recognize that a trip by an em-

ployee may be partly on the business of the master and partly on personal business. *Free* v. *Indemnity Ins. Co. of North America,* 177 Tenn. 287, 145 S. W. (2d) 1026.

In *American Casualty Co.* v. *McDonald,* 166 Tenn. 25, 28, 57 S. W. (2d) 795, 796, this Court quoted approvingly from a case decided by the Supreme Court of Wisconsin as follows:

"Counsel for the employee refer us to *Barragar* v. *Industrial Commission,* 205 Wis. 550, 238 N. W. 368, 369, 78 A. L. R. 679, which, following *Matter of Marks* v. *Gray,* 251 N. Y. 90, 167 N. E. 181, recognizes that a servant may be protected on his travel under a compensation statute, although service to the master is not the sole object of the trip. If the business of the master creates the necessity for the travel, the servant is in the course of his employment although he is furthering at the same time some purpose of his own.

"In disposing of the above case, the Wisconsin Court said:

" 'We have concluded that it is essential, by some process or other, to determine whether, at the outset, the trip in question was that of the employer, or that of the employee. Having determined that it was the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while enroute to, or returning from, the terminus of his trip. In case it is the employer's trip, and there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment' during such detour. If it is his own trip, then such detours as are made for the purpose of dispatching business for

his employer must be held to be within the scope of his employment.' "

There is no competent material evidence in the present case to show that any part of the trip was to perform any duties incident to Patton's employment; nor are there any circumstances, other than that Patton worked for Brayton & Company and had permission to drive the truck, that we can reasonably base an inference that he was in the act of performing any acts for his employer.

█ In 32 C. J. S., Evidence, Sec. 1044, pp. 1131-1133, it is said: "An inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture or guess; it must be reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning. An inference has been required to be based on probabilities, and not on mere possibility or possibilities; but according to other authorities, probabilities, as distinguished from facts proved, will not support an inference."

Petitioner's right to recover for her husband's death is not based on any reasonable inference to be drawn from the facts and circumstances but purely on surmise and conjecture. There was a possibility that deceased was going to Dyersburg to have the company's truck repaired, but this carries us into the realm of speculation.

In *Free* v. *Indemnity Ins. Co. of North America, supra,* 177 Tenn. at page 294, 145 S. W. (2d) at page 1028, this court said: "It is well settled by the authorities that the relation between master and his servant is suspended when the servant leaves the place of actual employment to go to his home for rest or food or to associate with his family."

We cannot agree with the contention of the defendants that the petitioner seeks to recover on the theory of an inference based upon an inference.

In 10 R. C. L., page 870, it is said: "It is a well-established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption cannot be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of serving as a base for a further inference or presumption, would be to spin out the chain of presumptions into the regions of the barest conjecture."

We see no basis for the contention in this record that there is an inference based upon an inference sought as the basis for the recovery, but rather that the only material evidence, which is positive and uncontradicted, is that the deceased was on a personal mission when he lost his life, and no reasonable inference can be drawn from the record that deceased was on the business of his employer at the time he lost his life. While it is elemental that the statute is to be given a liberal construction, yet the award must be supported by material evidence and must not be left to conjecture.

Judgment reversed and suit dismissed.

All Justices concur.