Clarence WILSON, Plaintiff,

v.

Heiskell H. WINSTEAD et al.,
Defendants.

No. CIV–2–78–25.

United States District Court,
E. D. Tennessee,
Northeastern Division.

July 12, 1978.

On Motion to Exclude Evidence
Nov. 14, 1978.

On Admissibility of Certain
Evidence Nov. 20, 1978.

On Claim of Immunity Nov. 22, 1978.

Joseph J. Levitt, Jr., Knoxville, Tenn., for plaintiff.

Charles R. Terry, Morristown, Tenn., N. R. Coleman, Jr., and Gene P. Gaby, Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, Tenn., and John F. Dugger, Bacon, Dugger & Jessee, Morristown, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

A United States magistrate of this district recommended on April 28, 1978 that the respective motions of the defendants herein for a dismissal of this action for the plaintiff's failure to state a claim against them upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, be granted as to the plaintiff's claim under 42 U.S.C. § 1985(3), but that the same be denied as to his claim under 42 U.S.C. § 1983. 28 U.S.C. § 636(b)(1)(B). A copy of such recommendation was mailed to counsel for each party by the clerk on the same date, and each defendant served and filed timely written objections to a portion of such recommendation. *Idem.* No objections were served and filed by the plaintiff.

The plaintiff failed to state a claim herein upon which relief can be granted under 42 U.S.C. § 1985(3). This statutory provision " * * * covers private conspiracies; but it was not 'intended to apply to all tortious, conspiratorial interference with the rights of others.' * * *" *Ohio Inns v. Nye,* C.A. 6th (1976), 542 F.2d 673, 678[2] (appendix), certiorari denied (1977), 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794, quoting from *Griffin v. Breckenridge* (1971), 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338. " * * * For the conspiratorial conduct to be actionable [under this section] 'there must be some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action.' * * *" *Ibid.,* 542 F.2d at 678[3]. An action brought under the provisions of 42 U.S.C. § 1985(3) must be founded on a class based invidious discrimination, *Smith v. Martin,* C.A. 6th (1976), 542 F.2d.688, 690[3], and there is no claim stated thereunder "* * * unless it is alleged that the conspiracy invidiously discriminated against a person * * * because he was a member of a class, * * *"

*Ohio Inns, Inc. v. Nye, supra*, 542 F.2d at 679[4]. See also *Timson v. Wright*, C.A. 6th (1976), 532 F.2d 552, 553[2].

■ There being no allegation herein that any defendant discriminated against the plaintiff Mr. Wilson because he was a member of a class, the magistrate correctly recommended that this aspect of the plaintiff's claim be dismissed. The recommendation in this regard hereby is ACCEPTED, 28 U.S.C. § 636(b)(1), and the plaintiff's claim herein under the provisions of 42 U.S.C. § 1985(3) hereby is DISMISSED for his failure to state a claim upon which relief can be granted.

■ The defendants contend that they are entitled to a dismissal also of the plaintiff's claim brought under the provisions of 42 U.S.C. § 1983. In considering such motion, the Court must treat all well-pleaded allegations of the complaint as true, *Miree v. DeKalb County* (1977), 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 2492 n.2, 53 L.Ed.2d 557, 581 n.2[2b], and must construe them liberally in favor of the plaintiff, *Ott v. Midland-Ross Corporation*, C.A. 6th (1975), 523 F.2d 1367, 1369[4]. Furthermore, as stated by Mr. Chief Justice Burger:

> \*　　\*　　\*　　\*　　\*　　\*
>
> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. \*　　\*　　\*
>
> \*　　\*　　\*　　\*　　\*　　\*

*Scheuer v. Rhodes* (1974), 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96[3–5]. Thus, a complaint should not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Ibid.*, 416 U.S. at 236, 94 S.Ct. at 1686, 40 L.Ed.2d at 96[3–5]. In this circuit,

dismissals of complaints brought under the civil rights statutes are scrutinized with particular care. *Westlake v. Lucas*, C.A. 6th (1976), 537 F.2d 857, 858[1].

The defendants herein are the duly elected attorney general for the 20th judicial circuit of Tennessee and two of his assistants attorney general. Each claims that he is entitled to a dismissal of the plaintiff's remaining claim herein because, as a state prosecutor, he is absolutely immune from any liability for money damages.

■ In support of this contention the defendants rely upon the decision of the Supreme Court in *Imbler v. Pachtman* (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. Therein, it was held " \*　　\*　　\* only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [42 U.S.C.] § 1983. \*　　\*　　\* " *Ibid.*, 424 U.S. at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 144. Writing for the Court, Mr. Justice Powell noted that Mr. Pachtman's activities had been " \*　　\*　　\* intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. \*　　\*　　\* " *Ibid.*, 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143. " \*　　\*　　\* The rationale for this absolute immunity is that prosecuting attorneys perform a quasi-judicial function. \*　　\*　　\* " *Walker v. Cahalan*, C.A. 6th (1976), 542 F.2d 681, 684, certiorari denied (1977), 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 357. However, a prosecuting attorney may also perform functions not quasi-judicial in nature although within the scope of his authority. *Ibid.*, 542 F.2d at 685. As to the conduct within the scope of the prosecutor's general powers, he is not absolutely immune but must rely on the good faith defense. *Ibid.*, 542 F.2d at 685[7].

■ The complaint herein alleges some conduct by the defendants to which it is " \*　　\*　　\* difficult to ascribe any judicial or quasi-judicial significance. \*　　\*　　\* " *Idem.* Factual issues are presented as to the defendants' absolute immunity, and the

plaintiff is entitled to offer proof thereon. *Idem.* Accordingly, the recommendation of the magistrate as to the plaintiff's claim under 42 U.S.C. § 1983 hereby is ACCEPTED, 28 U.S.C. § 636(b)(1), and as to this claim the motion of the defendants hereby is DENIED.

## ON MOTION TO EXCLUDE EVIDENCE

■ The defendant Mr. Wilson moved the Court *in limine* to order the plaintiff not to testify in the trial of this action that the defendant Mr. Weems told him (the plaintiff) that the moving defendant was to receive a portion of the $300 which, the plaintiff claims herein that, the defendants attempted to extort from him.[1] Any objection by Mr. Wilson to the admissibility of such anticipated testimony is premature and, for such reason, the motion hereby is

OVERRULED.

■ Mr. Wilson contends that, as to him, any such testimony by the plaintiff would constitute hearsay, Rule 801(c), Federal Rules of Evidence, and thus not be admissible. Rule 802, Federal Rules of Evidence. Any out-of-court statement of the defendant Mr. Weems would not be hearsay if it were offered against Mr. Weems, since such would be his own statement. Rule 801(d)(2)(A), Federal Rules of Evidence. Furthermore, to the extent that any statement of Mr. Weems is offered against Mr. Wilson, such would not be hearsay if Mr. Weems had been authorized by Mr. Wilson to make such statement, Rule 801(d)(2)(C), *supra,* or, if such statement was made by Mr. Weems as a coconspirator of Mr. Wilson during the course and in furtherance of a conspiracy, Rule 801(d)(2)(E), *supra.*[2]

Whether either of these conditions is met is a preliminary question on the admissibility of evidence to be determined by the Court under Rule 104(a), Federal Rules of Evidence, involving factfinding responsibilities. *United States v. Enright,* C.A. 6th (1978), 579 F.2d 980. Such a determination cannot be made at this time.

Mr. Wilson will have ample opportunity at trial to object to the admissibility of such testimony and, to the extent a hearing is held on such preliminary matter, such shall be conducted if the interest of justice so requires out of the hearing of the jury. Rule 104(c), Federal Rules of Evidence. In the event the disputed testimony is admitted as against Mr. Weems, but not as against Mr. Wilson, the Court, upon request, will restrict that evidence to its proper scope and instruct the jury accordingly. Rule 105, Federal Rules of Evidence.

## ON ADMISSIBILITY OF CERTAIN EVIDENCE

This is an action for damages for deprivation of the plaintiff's civil rights. The defendant Mr. Winstead is the elected district attorney general of a circuit of Tennessee, and his codefendants Messrs. Weems and John K. Wilson are his appointed assistants. The plaintiff Mr. Clarence Wilson (no relation of the defendant Mr. John K. Wilson) testified that Mr. Weems approached him on February 28, 1977 and demanded weekly " * * * protection * * * " payments for the plaintiff's operation of his nightclub; that he (the plaintiff Mr. Wilson) declined to make such payments; and that Mr. Weems forewarned him that, in that event, he should " * * * expect what * * * " he " * * * would get * * * " from such prosecuting attorneys.

The defendant Mr. Weems properly made no objection to these statements of the plaintiff Mr. Wilson as against himself. They constituted obviously statements by Mr. Weems as a party against himself. However, Messrs. Winstead and John K. Wilson objected to such statements, made

---

1. The motion also requested the Court to order counsel for the plaintiff to refrain from asking the plaintiff any questions relating to such conversation which would call for an answer naming Mr. Wilson or indicating that Mr. Weems said that Mr. Wilson was to receive a portion of said sum of money.

2. The "coconspirator rule" may be applicable even where the pleadings do not charge the defendants with having engaged in a conspiracy. *United States v. Enright, infra,* 579 F.2d at 985, n. 5.

outside their respective presences, as hearsay as to themselves. Mr. Clarence Wilson contended that such statements by Mr. Weems presented an exception to the exclusionary hearsay rule, and that they were admissible also as against Messrs. Winstead and John K. Wilson.

The statements made by Mr. Weems in this context would be admissible against Messrs. Winstead and John K. Wilson only if the latter persons had authorized Mr. Weems to make such statements to Mr. Clarence Wilson; or if Mr. Weems made them concerning a matter within the scope of his agency of his codefendants (or as the servant of the defendant Mr. Winstead); or if the defendants, or at least one of them, and Mr. Weems were coconspirators, and Mr. Weems made such statements during the course, and in furtherance, of such conspiracy. Rule 801(d)(2)(C), (D), (E), Federal Rules of Evidence.[3] The Court determined this preliminary question regarding the admissibility of this evidence against Messrs. Winstead and John K. Wilson, Rule 104(a), Federal Rules of Evidence, out of the hearing of the jury herein, the interests of justice so requiring, Rule 104(c), Federal Rules of Evidence. *Cf. United States v. Enright, supra* (in which this procedure was sanctioned in the more demanding context of a criminal trial).

The plaintiff offered no direct evidence that Mr. Weems' statements to Mr. Clarence Wilson had been authorized to be made on behalf of either Mr. Winstead or Mr. John K. Wilson. He offered no direct evidence that those statements by Mr. Weems were within the scope of his agency of Messrs. Winstead or John K. Wilson or within the scope of his employment under Mr. Winstead. Neither did he offer any direct evidence of a conspiracy between and among Mr. Weems and his codefendants, or either of them, which was in existence at the time Mr. Weems made the statements

to the plaintiff Mr. Clarence Wilson. Rather, the plaintiff conceded that he had no such evidence to offer.

He claimed, nonetheless, that statements by Messrs. John K. Wilson and Weems and their appearances against him subsequently in administrative proceedings relating to the Greene County, Tennessee beer board required an inference that Mr. Weems' earlier statements to Mr. Clarence Wilson were in his (Mr. Weems') capacity representing his codefendants; and that on the earlier occasion Mr. Weems was either (a) authorized by his codefendants to make the statements he made to Mr. Clarence Wilson, (b) was then the agent of both his codefendants or the servant of his codefendant Mr. Winstead and made such statements within the scope of such agency or employment, or (c) was a coconspirator with his codefendants and made such statements during the course, and in furtherance, of the conspiracy between or among them.

■ This Court does not agree. No such inference may be made except by a process of logic and reason based upon the commonly-accepted experiences of mankind; it must be the inference(s) which reasonable persons would draw from their experiences. See 29 Am.Jur. (2d) 195–196, Evidence, § 161. Inferences must be based upon probabilities and can never be the result of surmise and conjecture. *Kenwood Lumber Co. v. Illinois Cent. R. Co.,* C.C.A. 4th (1933), 65 F.2d 661, 664–665[1]. They can never rest upon a premise which is wholly uncertain. *Patton v. Brayton & Co.* (1947), 184 Tenn. 592, 598(5), 201 S.W.2d 981.

■ Furthermore, a rational connection must have been shown between the fact(s) proved and the ultimate fact to be inferred from that fact or those facts. *Morrison v. California* (1934), 291 U.S. 82, 90, 54 S.Ct. 281, 78 L.Ed. 664, 670 (headnote 6).

---

3. " * * * A statement is not hearsay if—

* * * * * *

" * * * The statement is * * * a statement by a person authorized by him to make a statement concerning the subject, or * * * a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or * * * a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(C), (D), (E), *supra.*

" * * * In other words, a fact can be regarded as the basis of an inference only where the inference, on the basis of human experience, is a probable and natural explanation of the fact, and logically flows from the fact. Inferences may not be drawn from one transaction to another that is not specifically connected with it, merely because the two resemble each other, but must be linked together by the chain of cause and effect and common experience. [Footnote references omitted.] * * * " 29 Am.Jur. (2d) 197, Evidence, § 162.

■ As applied to our instant problem, it cannot be said with the required degree of certainly that the cause of any problems of Mr. Clarence Wilson with the beer board of his county was any of the factors set forth hereinabove as (a), (b) or (c). Some sophisticated persons would so conclude, but this Court is of the opinion that that is not a part of an experience of mankind which is commonly-accepted. Accordingly, it is not concluded that reasonable persons would draw any such inference(s) from the facts proved, dealing as they do with surmise, conjecture and possibilities, but not with probabilities. It would be overreaching, indeed, to conclude judicially that the logical explanation flowing from the subsequent statements and activities of Messrs. John K. Wilson and Weems was that Mr. Weems and one or both of his codefendants had conspired so to do, or that his codefendants had authorized Mr. Weems to so state to Mr. Clarence Wilson, or that, in making such statements, Mr. Weems was acting within the scope of his agency or employment on behalf of his codefendants, or either of them.

In light of the foregoing criteria, the respective objections of Messrs. Winstead and John K. Wilson were SUSTAINED, and the jury was instructed to consider the statements allegedly made by Mr. Weems to Mr. Clarence Wilson against Mr. Weems only and not against either of his codefendants. The plaintiff's objection to this evidentiary ruling was noted, and, that without voicing it again, he had a continuing objection to all testimony and other evidence flowing herefrom.

## ON CLAIM OF IMMUNITY

After the plaintiff had completed the presentation of his evidence herein as to the alleged events of February 28, 1977 and had testified earlier to the conduct of the defendants subsequent to that date which he maintained infringed his federal constitutional rights, the Court communicated to the parties and their counsel, in the absence of the jury, his preliminary view of the in-trial status of this litigation. This memorandum is an extension and refinement of those comments.

The plaintiff Mr. Clarence Wilson claims that he, a citizen of the United States, was deprived by the defendants, stipulated to have been acting at all times pertinent hereto under color of Tennessee law, of his rights under the Constitution, Fourteenth Amendment. 42 U.S.C. § 1983. Although the particular right claimed was not specified, the Court assumes this lawsuit implicates the federal right to due process of law.

Mr. Clarence Wilson appears to claim that he was denied process of law due him by (1) a raid of his night-club on a search warrant which had been issued by a judicial officer on the basis of an affidavit of the defendant Mr. Winstead; (2) his prosecution in the courts of Tennessee by Mr. John K. Wilson for violation of the liquor laws of Tennessee, resting upon evidence procured in that raid; (3) the institution by Mr. Winstead for the state of Tennessee and the prosecution by his assistant Mr. John K. Wilson of judicial proceedings to padlock such night-club property as a nuisance because unlawful sales had been carried-on there of intoxicating liquors; and (4) the appearance by the defendants Messrs. John K. Wilson and Weems in administrative proceedings before the beer board of Greene County, Tennessee and statements made before it in opposition to applications of third persons for licenses to sell beer on this night-club property: all because he refused to pay weekly monetary tribute to the defendant Mr. Weems to buy his "freedom."

■ Counsel for the plaintiff seemed to concede that Mr. Winstead, as the district attorney general of the 20th judicial circuit of Tennessee, and Messrs. Weems and John K. Wilson, as his assistants, are immune from an award of money damages in so far as is concerned their prosecution and presenting of the criminal case of the state of Tennessee against Mr. Clarence Wilson. This is true without question, as the Supreme Court held specifically in *Imbler v. Pachtman, supra,* 424 U.S. at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 144 [lc].

■ Counsel appeared to concede further that Mr. Winstead is immune from any award of money damages in connection with his role in seeking the aforementioned search warrant. This, likewise, is clearly established. Mr. Winstead was under the inherent duty of investigating all infractions of the public peace and all acts which are against the peace and dignity of this state. *State ex rel. Swan v. Pack* (Tenn., 1975), 527 S.W.2d 99, 112[14, 15]. In proceeding through the established warrant procedure to search this night-club, Mr. Winstead was clearly engaging in that type of " * * * legitimate and restrained investigative conduct * * * " which draws the approval of the courts. See *Terry v. Ohio* (1968), 392 U.S. 1, 15, 88 S.Ct. 1868, 20 L.Ed.2d 889, 903.

■ Mr. Winstead enjoyed immunity also in the performance of the inherent duty of his office concerned with instituting on his relation for the state of Tennessee and maintaining the lawsuit in the Criminal Court of Greene County, Tennessee, to abate the nuisance on the night-club property of Mr. Clarence Wilson. It was a nuisance under Tennessee law for Mr. Clarence Wilson to have carried-on or permitted the unlawful sales of intoxicating beverages on that property. T.C.A. § 23–301(1)(c). The padlocking of this property on the order of the aforenamed court in a proceeding instituted under the foregoing nuisance statute did not deprive Mr. Clarence Wilson of his federal right to due process of law or any other right he had under the federal Constitution. *State v. Caldwell,* C.A.Tenn.

(1964), 53 Tenn.App. 195, 381 S.W.2d 553, 555[2], certiorari denied (1964).

Counsel for Mr. Clarence Wilson did urge upon this Court, however, that in appearing before the aforenamed administrative body and making statements in opposition to the applications under consideration, the defendants Messrs. John K. Wilson and Weems were not absolutely immunized from an award of money damages. That attorney's reliance on *In re Grand Jury Subpoenas,* C.A. 6th (1978), 573 F.2d 936, as authority for his position, is misplaced. That authority was vacated as a matter of law subsequently and is no longer a viable exposition of the applicable law. See *In re April 1977 Grand Jury Subpoenas,* C.A. 6th (1978), 584 F.2d 1366 (*en banc*).

The Court agrees with plaintiff's counsel that the extension of absolute immunity against money damages to administrative proceedings has not been as clearly enunciated as have been the other issues. Nonetheless, the principles to guide us are lucid.

■ The statute of Tennessee relating to the issuance of beer-permits permits " * * * any person or his attorney * * * " to appear and make statements in a public hearing on an application for a permit to sell beer. T.C.A. § 57–205. Messrs. Weems and John K. Wilson are, not only attorneys, but assistants district attorney general: public advocates. It follows logically that their appearance and statements before this beer board were in their respective roles of advocates. This Court is of the opinion that absolute prosecutorial immunity from money damages is extended to all discharging of a prosecuting attorney's responsibility in such " * * * role of an * * * advocate. * * * " *Imbler v. Pachtman, supra,* 424 U.S. at 430–431, 96 S.Ct. 984, 47 L.Ed.2d at 143–144.

This immunity accorded a prosecuting attorney is so completely pervasive that it must protect even such an official who is accused of having acted corruptly or out of malice. Our prosecuting attorneys must be made to feel free to do their jobs in the public interest without having to fear the consequences of their official actions. If, in

enforcing the law and prosecuting its violations, a prosecuting attorney did not have this protection, fearless and faceless law enforcement would be hampered by the gnawing prospect that any disgruntled person who is accused could hound the prosecutors with lawsuits on charges of having had a malicious feeling toward the accused or even upon official corruption. Absolute prosecutorial immunity is, therefore, a highly necessary concept of the law in the public interest.

 This is not to indicate that the defendant Mr. Weems could have with impunity and immunity demanded a bribe of Mr. Clarence Wilson and not run afoul of the latter's federal right to due process. Had Mr. Clarence Wilson claimed that Mr. Weems punished him by demanding money of him because he was doing what the law plainly allows him to do, such as, for example, operating a legitimate night-club business, he would have advanced a viable claim of a due process violation of the most basic sort. If the claim had been, and the proof had shown, that Mr. Weems, as an agent of the state of Tennessee, pursued a course of action the objective of which was to penalize Mr. Clarence Wilson's reliance on his legal rights, that conduct on Mr. Weems' part would have been " * * * 'patently unconstitutional.' * * * " *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, 611[5]. Such, however, was neither the claim nor the proof in this case.

The Court had heard undisputed evidence that the search of the night-club property of Mr. Clarence Wilson produced evidence of the commission of a crime there; that he was convicted of a crime on that evidence; that he created and maintained a nuisance on his property, by carrying-on or permitting the sale of intoxicating liquors in his night-club unlawfully; and that he had sought to lease his night-club property to a person or person(s) whose record(s) of certain criminal violations disqualified them under the law to receive a permit to sell beer there. Mr. Clarence Wilson had made no claim and no showing that Mr. Weems had sought to punish him because he had done, or was doing, what the law plainly

allows him to do, or that Mr. Weems' course of action toward him had the objective of penalizing Mr. Clarence Wilson for his reliance upon his legal rights.

After devoting long periods of 3 days to the trial, this Court deemed it expedient to voice its reflections and present its present views to counsel before the litigants had devoted more time and incurred more expense in presenting numerous additional witnesses. It sometimes escapes some persons that this is not a court of general jurisdiction, authorized to consider every type of claim by a litigant. We were dealing with a claim of deprivation of federal constitutional rights under color of state law: *nothing more.* The conduct of the defendants which was claimed by the plaintiff to have so deprived him in this instance, being protected by a cloak of absolute prosecutorial immunity, it appeared to be a waste of time for these proceedings to continue without such comment when the needless presentation of cumulative evidence was in prospect. See Rule 403, Federal Rules of Evidence.